UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

TAYLOR JAMISON                                    CIVIL ACTION NO. 15-0267

VERSUS                                            JUDGE S. MAURICE HICKS, JR.

CITY OF SHREVEPORT, ET AL.                        MAGISTRATE JUDGE HORNSBY

## MEMORANDUM RULING

Before the Court is Motion for Summary Judgment (Record Document 12) filed by Defendants, the City of Shreveport ("the City"), Willie Shaw ("Chief Shaw"), and Officer D. Jackson ("Officer Jackson"). Defendants seek summary judgment in their favor and the dismissal of all of Plaintiff Taylor Jamison's ("Jamison") claims with prejudice. Jamison opposed the motion as to his claims against Officer Jackson. See Record Document 16. Jamison does not oppose the dismissal of the claims against the City and Chief Shaw. See Record Document 16 at 10. For the reasons set forth below, the Motion for Summary Judgment is **GRANTED** and all of Jamison's claims are **DISMISSED WITH PREJUDICE**.

## BACKGROUND

Jamison filed the instant Section 1983 action for violation of the Fourth and Fourteenth Amendments. He also asserts state law claims. More specifically, he alleges unreasonable seizure, excessive use of force, and failure to properly train and supervise. See Record Document 1 at ¶¶ 38-57. Jamison maintains that Officer Jackson, without probable cause or reasonable suspicion, unlawfully detained him and battered him during an incident that occurred in downtown Shreveport, Louisiana in March 2014. See id. at ¶¶ 12-26.

On March 1, 2014, at approximately 8:00 p.m., the Shreveport Police Department

received a call concerning a group of juveniles fighting around the city bus terminal in downtown Shreveport. See Record Document 20 at D(1) (Stipulated Facts). Sergeant Pat Duncan ("Sergeant Duncan") and a female officer were the first officers to respond to the call. See Record Document 16, Exhibit 2 at 9. The fight was over when the officers arrived. See id., Exhibit 2 at 10-12. Two of the individuals involved in the fight remained at the scene and were questioned by Sergeant Duncan. See id. at 10-11. Sergeant Duncan eventually placed the two juveniles in his patrol car and drove around looking for the third juvenile involved in the fight, who had fled. See id. at 11. The two juveniles told Sergeant Duncan that the name of the third juvenile was Robert. See id. at 11-12, 29-30.

The record is unclear if Officer Jackson first responded to the city bus station or encountered Sergeant Duncan in the vicinity of the bus station while Sergeant Duncan was driving around looking for Robert. See Record Document 12-1 at ¶ 2; Record Document 16-1 at ¶ 2. It is undisputed that while Sergeant Duncan and Officer Jackson were speaking, Robert ran by, within 100 feet of the officers. See Record Document 16, Exhibit 2 at 13. Sergeant Duncan pointed to Robert and ordered Officer Jackson to catch Robert. See id. When spotted by Sergeant Duncan and Officer Jackson, Robert was wearing dark clothing, including a dark shirt with white lettering on its back. See id. at 14. Robert ran and Officer Jackson chased him. Officer Jackson ordered Robert to stop, but he continued running and ran around the corner of a building. Officer Jackson lost sight of Robert.

According to Officer Jackson, when he turned the corner of the building, he saw a young black male wearing dark clothing (jeans, a navy or black polo shirt, and dark shoes). See Record Document 12-1 at ¶ 6. Officer Jackson stated that the young black man, later identified as Jamison, was running in front of an apartment complex in the direction away

from him. See id. at ¶ 7. Jamison maintains that he was not running. See Record Document 16-1 at ¶ 7. When Officer Jackson reached Jamison, he performed a straight arm bar takedown and took Jamison to the ground. Less than one minute later, other officers arrived at the scene and advised Officer Jackson that Jamison was not the suspect they were looking for. Sergeant Duncan stated that Jamison was "more slender" than Robert and Jamison was taller than Robert. Record Document 16, Exhibit 2 at 15. Officer Jackson assisted Jamison to his feet and apologized. Jamison and his friends visited with the officers for several minutes after the incident, with Jamison laughing with the group about what had occurred. At no time during the incident did Officer Jackson punch or kick Jamison, nor did he use his baton, flashlight, taser or other weapon against him. Jamison's physical injuries were limited to a "knot on his head," "skin burns," scrapes and bruises, none of which required medical treatment. Record Document 16, Exhibit 1 at 26-27.

Jamison filed the instant Section 1983 action in February 2015. See Record Document 1. Defendants now move for summary judgment and seek dismissal of all of Jamison's claims. See Record Document 12. Again, Jamison has opposed only the dismissal of the claims against Officer Jackson. See Record Document 16.

## LAW AND ANALYSIS

**I.  Summary Judgment Standard.**

Summary judgment is proper pursuant to Rule 56 of the Federal Rules of Civil Procedure when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Quality Infusion Care, Inc. v. Health Care Serv.

Corp., 628 F.3d 725, 728 (5th Cir.2010).[1] "Rule 56[(a)] mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Patrick v. Ridge, 394 F.3d 311, 315 (5th Cir.2004).

"A party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553 (1986). If the moving party fails to meet this initial burden, the motion must be denied, regardless of the nonmovant's response. See Tubacex, Inc. v. M/V Risan, 45 F.3d 951, 954 (5th Cir.1995).

If the movant demonstrates the absence of a genuine dispute of material fact, "the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine [dispute] for trial." Gen. Universal Sys., Inc. v. Lee, 379 F.3d 131, 141 (5th Cir.2004). Where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant, then summary judgment should be granted. See Boudreaux v. Swift Transp. Co., 402 F.3d 536, 540 (5th Cir.2005). Where the parties dispute the facts, the Court must view the facts and draw reasonable inferences in the light most favorable to the plaintiff. See Scott v. Harris, 550 U.S. 372, 378, 127 S.Ct.

---

[1]The Court notes that Rule 56 now employs the phrase "genuine dispute," rather than "genuine issue." This 2010 amendment does not alter the Court's analysis, as there was not a substantive change to the summary judgment standard. See F.R.C.P. 56(a) and advisory committee's note.

1769 (2007). In sum, the motion for summary judgment "should be granted so long as whatever is before the district court demonstrates that the standard for the entry of summary judgment, as set forth in Rule 56(c), is satisfied." Celotex Corp., 477 U.S. at 323, 106 S.Ct. at 2553.

## II.     Claims Against the City and Chief Shaw.

Jamison asserted an official capacity claim against Chief Shaw. He alleged Monell claims against the City, maintaining that the City failed to properly train its officers in the detention of suspects who are compliant with police commands and failed to properly supervise its officers relative to the use of force. Defendants seek summary judgment in their favor as to these claims. See Record Document 12-2 at 17-19. In opposing the Motion for Summary Judgment, Jamison stated: "The defendants' motion is not objected to as to the other claims [claims against Chief Shaw and the Monell claims against the City] raised in the motion for summary judgment." Record Document 16 at 10. Accordingly, summary judgment in favor of Defendants is **GRANTED** and all claims against the City and Chief Shaw are **DISMISSED WITH PREJUDICE**.

## III.    Qualified Immunity.

Qualified immunity shields government officials from suit for damages if a reasonable officer could have believed his conduct to be lawful, in light of clearly established law and the information the officers possessed. See Hunter v. Bryant, 502 U.S. 224, 227, 112 S. Ct. 534, 536 (1991). Because "the entitlement is an immunity from suit rather than a mere defense to liability, [the Supreme Court] repeatedly [has] stressed the importance of resolving immunity questions at the earliest possible stage in litigation." Id.

In Saucier v. Katz, 533 U.S. 194, 121 S.Ct. 2151 (2001), the Supreme Court mandated a two-step sequence for resolving government officials' qualified immunity claims. First, a court must decide whether the facts that a plaintiff has alleged or shown make out a violation of a constitutional right. See id. at 201, 121 S.Ct. at 2156. Second, if the plaintiff has satisfied this first step, the court must decide whether the right at issue was clearly established at the time of defendant's alleged misconduct. See id. In Pearson v. Callahan, 555 U.S. 223, 129 S.Ct. 808 (2009), the Supreme Court held that the two-step sequence should no longer be regarded as mandatory and that "judges of the district courts and the courts of appeals should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." Id. at 236, 129 S.Ct. at 818. "The protection of qualified immunity applies regardless of whether the government official's error is a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." Id. at 231, 129 S.Ct. at 815, quoting Groh v. Ramirez, 540 U.S. 551, 567, 124 S.Ct. 1284, 1295 (2004) (Kennedy, J., dissenting) (qualified immunity covers "mere mistakes in judgment, whether the mistake is one of fact or one of law").

### IV. Claims Against Officer Jackson.

#### A. Unreasonable Seizure.

In analyzing Jamison's claim for unreasonable seizure, this Court will exercise its discretion under Pearson and address the second prong of qualified immunity first. See Pearson, 555 U.S. at 236, 129 S.Ct. at 818. Thus, assuming for the limited purpose of the instant Memorandum Ruling that a constitutional violation occurred, this Court must

determine whether Officer Jackson's actions in detaining Jamison were objectively reasonable in light of clearly established law.

The Fourth Amendment protects against unreasonable searches and seizures. In Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868 (1968), the Supreme Court held the police may stop and briefly detain a person for investigative purposes if they have a reasonable suspicion that criminal activity may be afoot, even if they lack probable cause under the Fourth Amendment. See Terry, 392 U.S. at 30-31, 88 S.Ct. at 1884-1885. "Reasonable suspicion requires only a minimum level of objective justification, just more than a hunch." Estep v. Dallas Cty., Tex., 310 F.3d 353, 363 (5th Cir. 2002). "Whether reasonable suspicion exist[s] is judged on the totality of the circumstances." Id.

Jamison argues that summary judgment is not appropriate because a genuine issue of material fact for a jury to determine if a reasonable police officer would have behaved like Officer Jackson and "thrown an innocent citizen to the ground without warning or justification." Record Document 16 at 5. Jamison's contention that Officer Jackson, like Sergeant Duncan, should have been able to distinguish him from Robert, the suspect, is not sufficient to defeat summary judgment on the basis of qualified immunity.

This Court holds that Officer Jackson is entitled to qualified immunity as to the unreasonable detention claim, as this case involves a mistake in judgment attributable to a mistake of fact. See Pearson, 555 U.S. at 231, 129 S.Ct. at 815; Groh, 540 U.S. at 567, 124 S.Ct. at 1295 (qualified immunity covers "mere mistakes in judgment, whether the mistake is one of fact or one of law"). On the night in question, it was dark outside and Sergeant Duncan had identified a young, black male wearing dark clothing. Sergeant Duncan had interaction with Robert prior to pointing him out to Officer Jackson. Thus,

Sergeant Duncan had more opportunity to observe Robert's height, weight, and clothing. It is undisputed that the foot chase unfolded rapidly (approximately 2 minutes) and Officer Jackson had only seconds to observe the suspect before he turned the corner and Officer Jackson lost sight of him. See Record Document 12, Exhibits A-1, A-2 & A-3. Additionally, Officer Jackson explained in his deposition that it is more difficult to discern height and exact clothing when engaged in a foot chase. See Record Document 19, Exhibit D at 39-40. A reasonable officer in Officer Jackson's position would have believed there was reasonable suspicion that Jamison was the suspect who had fled on foot. Officer Jackson made a mistake of fact and his actions were not unreasonable considering the totality of the circumstances. See Estep, 310 F.3d at 367 ("Whether the officers had reasonable suspicion under the Fourth Amendment is a close call. We expect police officers routinely to make close calls . . . . When they guess wrong, we protect their reasonable decisions with qualified immunity"); see also Maryland v. Garrison, 480 U.S. 79, 87, 107 S. Ct. 1013, 1018 (1987) (noting the need to allow some latitude for honest mistakes that are made by officers). Summary judgment is, therefore, **GRANTED** in favor of Officer Jackson as to the unreasonable detention claim.

    **B.**    **Excessive Force.**

    The Fourth Amendment protects against excessive force. With respect to a claim of excessive force, the reasonableness standard applies and "not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment." Graham v. Connor, 490 U.S. 386, 396, 109 S.Ct. 1865, 1872 (1989). Reasonableness "must embody allowance for the fact that police officers are often forced

to make split-second judgments in circumstances that are tense, uncertain, and rapidly evolving about the amount of force that is necessary in a particular situation." Id. at 397, 109 S.C.t at 1872. Federal courts have long recognized that the right to make an investigatory stop "necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." Id. at 396, 109 S.Ct. at 1871-1872. In determining reasonableness, courts must pay "careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Id. at 396, 109 S.Ct. at 1872. In the Fifth Circuit, it is clearly established that in order to state a claim for excessive force, "a plaintiff must allege (1) an injury, which (2) resulted directly and only from the use of force that was clearly excessive to the need; and the excessiveness of which was (3) objectively unreasonable." Ikerd v. Blair, 101 F.3d 430, 433-434 (5th Cir. 1996).

Defendants move for summary judgment on the ground that Jamison cannot establish a constitutional violation because he suffered no more than a *de minimis* injury which is insufficient to support a Section 1983 claim. See Hudson v. McMillian, 503 U.S. 1, 9-10, 112 S.Ct. 995, 1000 (1992) (recognizing that "*de minimis* uses of physical forces are insufficient to establish a constitutional violation); Ikerd, 101 F.3d at 434 ("The Fifth Circuit requires a plaintiff to have suffered at least some injury"). Jamison admitted in his deposition that his physical injuries were a head knot on his forehead, skin burns on the back and front of his arms, knee scuffs, and concrete burns on his shin areas. See Record Document 12, Exhibit C at 26-27). He admitted he did not seek any medical treatment for his injuries. See id., Exhibit C at 28. Several months after the incident he went to the

doctor for a cold and told the doctor that he'd had trouble sleeping since the incident, but he was not prescribed any treatment or medication. See id. Under the circumstances of this case, Jamison's injuries simply do not give rise to a constitutional violation. See e.g., Elphage v. Gautreaux, 969 F.Supp.2d 493, 509 (M.D.La. 2013) (minor scrapes and a temporary "ring" around plaintiff's wrist from the handcuffs were *de minimis*); Reaux v. Sibley, No. 09-00407, 2011 WL 2455759 (W.D.La. May 25, 2011) ("scratches and a small knot on the forehead are injuries that are so minor they are *de minimis*"); Golla v. City of Bossier City, 687 F.Supp.2d 645, 660 (W.D.La. 2009) (plaintiff's cuts on his feet were *de minimis*); Carthon v. Prator, No. 08-1238, 2009 WL 3347115 (W.D.La. Oct. 14, 2009) (a scrape on the plaintiff's forehead was insufficient to establish a constitutional violation). Other than his reliance on Williams v. Bramer, 180 F.3d 699, 704 (5th Cir.), *decision clarified on reh'g*, 186 F.3d 633 (5th Cir. 1999), for the principle that what constitutes an injury in an excessive force claim is subjective because it is defined entirely by the context in which the injury arises, Jamison has offered no authority demonstrating that his "scrapes and bruises" are more than *de minimis* or otherwise rise to the level of an injury sufficient to constitute a constitutional violation. Record Document 16 at 7. Summary judgment is, therefore, **GRANTED** in favor of Officer Jackson as to the excessive force claim.

    **C.**    **State Law Claims.**

Jamison alleges state law tort claims arising from the same allegations of unlawful detention and excessive use of force discussed above. (Rec. Doc. 1). It is well settled that Louisiana employs the same standards in analyzing state law claims of unlawful detention and excessive use of force as federal law, namely, whether the officer's actions were

"reasonable" under the circumstances.  See Colston v. Barnhart, 130 F.3d 96, 99 (5th Cir. 1997); Reneau v. City of New Orleans, No. 03-1410, 2004 WL 1497711, *4 (E.D.La. July 2, 2004), citing Kyle v. City of New Orleans, 353 So.2d 969, 973 (La.1977); see also Ford v. City of Shreveport, No. 09-1913, 2011 WL 5546917, *2 (W.D.La. Nov. 14, 2011).  Thus, for the reasons set forth above, Officer Jackson's actions were reasonable under the totality of the circumstances.  Summary judgment in favor of Defendants is **GRANTED** and Jamison's state law claims are likewise **DISMISSED WITH PREJUDICE**.

## CONCLUSION

Based on the foregoing analysis, Defendants' Motion for Summary Judgment (Record Document 12) is **GRANTED** and all of Jamison's claims are **DISMISSED WITH PREJUDICE**.  A judgment consistent with the terms of the instant Memorandum Ruling shall issue herewith.  The Clerk of Court is directed to close this case.

**IT IS SO ORDERED.**

**THUS DONE AND SIGNED**, in Shreveport, Louisiana, this 18th day of July, 2016.

_____
S. MAURICE HICKS, JR.
UNITED STATES DISTRICT JUDGE